Steven M. Wilker, OSB 911882
  Direct Dial:  (503) 802-2040
  Direct Fax:  (503) 972-3740
  E-Mail:  steven.wilker@tonkon.com
Christopher J. Pallanch, OSB No. 075864
  Direct Dial:  (503) 802-2104
  Direct Fax:  (503) 972-3804
  E-Mail:  christopher.pallanch@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204
        Attorneys for Plaintiff


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| **THE GLUTEN FREE BAKING COMPANY LLC,** an Oregon limited liability company, and **UNITED STATES BAKERY**, an Oregon corporation, | Civil No. 3:17-cv-00146 |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | |
| **CANYON BAKEHOUSE HOLDINGS, LLC** , a Missouri limited liability company, and **CANYON BAKEHOUSE, LLC**, a Colorado limited liability company, | |
| Defendants. | |

        Plaintiffs The Gluten Free Baking Company LLC ("TGFBC") and United States

Bakery ("USB") (collectively, "Plaintiffs") allege as follows:

**PARTIES**

1.      Plaintiff The Gluten Free Baking Company LLC, previously known as "Northwest Canyon Bakehouse LLC," is an Oregon limited liability company.  Plaintiff's sole member is United States Bakery, which is an Oregon corporation with its principal place of business in Portland, Oregon.

2.      Upon information and belief, Defendant Canyon Bakehouse Holdings, LLC is a limited liability company organized under the laws of Missouri.  Upon information and belief, all of its members are residents or citizens of Missouri or Colorado.

3.      Upon information and belief, Defendant Canyon Bakehouse, LLC is a limited liability company organized under the laws of Colorado.  Upon information and belief, all of its members are residents or citizens of Colorado.

**JURISDICTION**

4.      Because Plaintiffs are citizens of Oregon and Defendants are citizens of Colorado and/or Missouri, there is complete diversity of citizenship.

5.      The value of the declaratory relief sought is in excess of $75,000.

6.      Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction of this action because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

**VENUE**

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

8.      In addition, the parties contractually agreed to venue in this Court under

PAGE 2 -   COMPLAINT

the terms of a Formulas License Agreement ("License Agreement"), which provide in part: "The state and federal courts in either Portland, Oregon, or Colorado shall have exclusive jurisdiction over any dispute arising out of or relating to this Agreement, and the parties waive any argument that any such venue is inconvenient."

## NATURE OF THE CASE

9.      This is an action for declaratory judgment under 28 U.S.C. § 2201.

## FACTUAL ALLEGATIONS

### The License Agreement

10.      Plaintiff United States Bakery has been a commercial bakery operating in the Pacific Northwest for more than 100 years.

11.      In October 2012, USB and Defendant Canyon Bakehouse Holdings, LLC jointly formed and owned (in different proportions) two limited liability companies—Plaintiff TGFBC (when it was known as "Northwest Canyon Bakehouse") and Defendant Canyon Bakehouse, LLC—to produce and sell gluten free bread products.

12.      On or about March 25, 2015, USB and Defendants agreed to a new arrangement that involved the rescission of the 2012 arrangement and the re-purchase of the parties' respective membership interests in The Gluten Free Baking Company LLC and Canyon Bakehouse, with each now separately owned entity intending to remain in the business of producing and selling gluten free bread products.

13.      As part of the rescission arrangements, USB agreed to a deferred payout of the return of its prior investment in Canyon Bakehouse, and the parties entered into a License Agreement, effective as of January 1, 2015, for a term functionally aligning with the term of the extended payout for the return of USB's prior investment in Canyon Bakehouse.  A true and

correct copy of the License Agreement is attached hereto as Exhibit 1 and incorporated by reference as if set forth in full herein.  Pursuant to the License Agreement, USB and The Gluten Free Baking Company LLC obtained a non-exclusive license to use certain formulas of Defendants to produce and sell gluten free bread products (referred to in the License Agreement as "NWCB Licensed Products").  Plaintiffs agreed not to subcontract or otherwise have a third party "make" any licensed product "or any part of any" licensed product.  In exchange for the right to use Defendants' formulas, Plaintiff TGFBC agreed to pay Defendant Canyon Bakehouse Holdings LLC quarterly royalty payments of $66,666 for the initial three year term, and $25,000 per quarter in each year that the License Agreement was extended.

14.    As contemplated by the terms of the License Agreement, both Plaintiffs and Defendants were allowed to sell gluten free bread products using the same formulas and recipes.  Plaintiffs and Defendants were thus potentially in competition in some markets for gluten free bread products produced from the same formulas.

15.    Under the License Agreement, the parties agreed to keep certain information—including the licensed formulas—confidential.  The licensed formulas themselves are not included in the License Agreement; instead they are found in a separate document called the "Formula Communication."  The Formula Communication contains specific details on how to bake gluten free bread, including specific ingredient lists (by brand, source, and baker's weight) and specific instructions (including time and temperature for baking).

16.    The License Agreement does not require Defendants to share any additions or changes to formulas or recipes (referred to as "CBH Derivatives") with Plaintiffs; nor are Defendants obligated to provide "any support or service" in connection with the license.

17.    The parties agreed that Plaintiffs would "own exclusive right, title, and

interest in and to all confidential and unique derivative works of the [licensed formulas] developed by [Plaintiff TGFBC], in the form of new products subsequently developed by [Plaintiffs]."  In exchange, if Plaintiffs used these derivative formulas, then the License Agreement would be extended for two years.  (The License Agreement refers to these derivatives as "NWCB Derivatives."  Although the phrase is first mentioned in section 2 of the License Agreement, it is not defined until section 4.1.  To avoid confusion with "CBH Derivatives," this Complaint will refer to the phrase as "Plaintiffs' Derivatives.")

18.    With respect to Plaintiffs' Derivatives, during the term of the license, Plaintiffs agreed not (a) to "sell, assign or license any right with respect to [Plaintiff's Derivatives]," (b) to have "any third party *make* any product with" Plaintiff's Derivatives, or (c) to "otherwise permit any Person (other than [Plaintiffs]) *to use* any" Plaintiff's Derivatives "to produce or distribute gluten free baking products."  (*See* License Agreement Section 2 (emphasis added).)

### The Dispute

19.    In early 2016, Plaintiffs bid for, and won, the right to make and produce a private label gluten free product for Walmart.

20.    Upon information and belief, Defendants also sought to win this business from Walmart.  Defendants have informed Plaintiffs that Walmart would have required Defendants to sell or otherwise transfer ownership of the formulas Defendants would have used in connection with producing and selling the Walmart private label products to Walmart.

21.    After learning that Plaintiffs had obtained the Walmart gluten free private label business, Josh Skow—the President of Defendant Canyon Bakehouse Holdings, LLC, and the President and Director of Defendant Canyon Bakehouse, LLC—sent an email dated

November 23, 2016, to USB's Chief Financial Officer.  Mr. Skow asked for verification that Walmart did not have access to or ownership of the formulas licensed under the License Agreement.

22.    Unlike the situation Defendants described, Plaintiffs were not asked or required to sell or otherwise transfer ownership to Walmart of any formulas they proposed to use for the Walmart private label products.  And as with other private label products that USB produces, Plaintiffs bake, package, and ship the gluten free bread from USB's own facilities. Accordingly, USB assured Mr. Skow that Plaintiffs were in compliance with the parties' License Agreement.

23.    Apparently dissatisfied with this answer, Mr. Skow again wrote to USB on December 2, 2016, and listed his understanding of Walmart's procedures: "I have specific knowledge that it is Wal-Mart's policy to have this info [i.e., specific formula information beyond ingredient lists] and even own the info that is shared for products that are in their label." Mr. Skow then requested information that Plaintiffs provided to Target with respect to a private label gluten free product for that company.  Mr. Skow refused to accept USB's assurances "that the license agreement is being interpreted correctly or being followed correctly."

24.    Regardless of Mr. Skow's apparent belief regarding Walmart's or Target's procedures, Plaintiffs were not required to follow the same restrictions that Mr. Skow reportedly faced in bidding for the Walmart business.  Rather, Plaintiffs disclosed only certain limited, public information: (1) ingredient information as listed on the packaging; (2) caloric count as listed on the packaging; (3) nutrient information as listed on the packaging; (4) an allergen warning; and (5) the approximate weight of the ingredients in the finished product (but not the individual weight quantities of the components (e.g., the number and quantity of the multiple

separate flour mix components used in the flour blend were not disclosed), and equally important there was no disclosure with respect to the mixing and baking process involved in making the bread).

**Accused Breaches**

25.     Still dissatisfied with Plaintiffs' responses, Defendants have now formally provided notice to Plaintiffs of three purported breaches of the License Agreement by letter dated January 9, 2017.  A notice of breach by the Licensor is a required step to asserting termination of the License by the Licensor.

26.     In the formal notice of breach, Defendants first assert that Plaintiffs breached section 2 of the License Agreement by allowing Walmart, Target, and a third company (Lewis Bakeries) to "distribut[e] and sell[] private label packaged goods manufactured by [Plaintiffs]" using the licensed formulas and/or Plaintiff's Derivatives.

27.     Second, Defendants assert that Plaintiffs disclosed confidential information in violation of the License Agreement.  Specifically, Defendants assert that disclosing "ingredient information and approximate weight of the ingredients" is prohibited by the License Agreement.

28.     Third, Defendants contend that Plaintiffs disclosed confidential information (as alleged in the preceding paragraph) but then did not promptly notify Defendants of that disclosure, thereby violating section 7.4 of the License Agreement.

29.     Plaintiffs deny and dispute each of Defendants' assertions.

30.     Plaintiffs did not disclose any Confidential Information in violation of the License Agreement to Walmart, Target, Lewis Bakeries, or anyone else for that matter.

31.     Plaintiffs did not convey, sell, give, assign, or otherwise transfer any

license or interest in the Formulas in contravention to the License Agreement.

32.     As alleged above, Plaintiffs always produced all of their gluten free products with their own personnel in USB's own facilities.  The finished products were then loaded onto trucks and taken to designated warehouses as specified by Target, Walmart, or Lewis Bakeries.

33.     At no point did Target, Walmart, or Lewis Bakeries make any licensed product or any part of any licensed product.

34.     At no point did Plaintiffs license or otherwise permit Target, Walmart, or Lewis Bakeries to use for the production of gluten free bread products any gluten free formulas for bread or buns, whether such formulas were developed by Plaintiffs or Defendants.

35.     At no point did Plaintiffs sell, assign, or license any of Plaintiffs' Derivatives to any Person (as defined in the License Agreement).

36.     At no point did Plaintiffs subcontract for, or otherwise have, any third party make any product with, or using, Plaintiffs' Derivatives.

37.     At no point did Plaintiffs permit any Person (other than Plaintiffs) to use any Plaintiffs' Derivatives to produce or distribute gluten free bakery products.

38.     Despite Plaintiffs' assurances and attempts to resolve this dispute without litigation, Defendants have now sent a formal notice of breach, which under the License Agreement triggers a 30 day period to "cure" the alleged breaches.  Defendants in effect are requiring Plaintiffs to somehow "prove the negative" that they did not violate the License Agreement.  Because Plaintiffs cannot undo the private label sales that have occurred of products made exclusively at Plaintiffs' baking facility, Defendants, having sent the formal notice of breach, will next assert termination of the License Agreement, causing the rights of the parties to

be uncertain until resolved by a final judgment of this Court, following all appeals.  Defendants'

assertion that Plaintiffs have breached the License Agreement puts Plaintiffs' sales of gluten free

private label bread products at risk.  The value to Plaintiffs of those private label sales exceeds

$75,000.

39.     Because Defendants have taken the position that Plaintiffs have breached

the License Agreement and no amount of assurance from Plaintiffs has satisfied Defendants that

Plaintiffs are not in breach of the License Agreement, Plaintiffs require a declaration from this

Court regarding the parties' respective rights and obligations under the License Agreement.

**CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT; ATTORNEY FEES & COSTS**

40.     Plaintiffs re-allege the above paragraphs as if asserted in full herein.

41.     An actual controversy has arisen between Plaintiffs and Defendants

concerning the parties' rights and obligations under the License Agreement.  Plaintiffs contend

that they have complied with all provisions of the License Agreement.  Defendants dispute that

contention.

42.     Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaration from this Court

that they have complied with the License Agreement and that Defendants are not entitled to

terminate the License Agreement.

43.     Because Plaintiffs have been required to file a lawsuit to protect their

rights under the License Agreement, under sections 10 and 16 of the License Agreement,

Plaintiffs are entitled to recover their reasonable attorney fees and costs in connection with this

action.

/ / /

PAGE 9 -   COMPLAINT

WHEREFORE, Plaintiffs pray as follows:

1)      For a declaratory judgment that Plaintiffs have complied with and have not breached the License Agreement;

2)      For an award of Plaintiffs' costs, disbursements, and reasonable attorney fees incurred in bringing this action;

3)      For such other relief as this Court deems just and equitable.

DATED this 27th day of January, 2017.


TONKON TORP LLP

By: *s/ Steven M. Wilker*
        Steven M. Wilker, OSB No. 911882
        Christopher J. Pallanch, OSB No. 075864

        Attorneys for Plaintiffs